Good afternoon. May it please the court. I'm Brian Neal for BNSF Railway Company, which is both a petitioner and an interviewer in these consolidated cases. We're proceeding today according to the order that the court entered on our joint motion as to how to allocate time, so that's why... Let me, if I may speak to that. The ultimate issue is whether there is enough, what I would call negligence plus, whether there's enough plus to get you into the punitive damage category. Is that the ultimate issue? Your Honor, I'm actually... We flipped the order around a little bit from what you may be thinking of. I'm representing BNSF Railway. I understand. I understand. I'm talking about issues. I'm not talking about parties or positions. I just want to know what the issue is. The principal issue that we are presenting is that the decisions of this court, along with two unchallenged findings of the ARB, compel reversal of the liability decision, which would mean you'd never get to the punitive damages issue. So, yeah. So, I get back to my point that the ultimate issue we have to decide is whether there's enough evidence to support a punitive damage claim. No, Your Honor. I think the first issue you have to decide is if there's enough evidence to support, and not really enough evidence, but whether the agency erred legally in upholding liability. And you've got to decide liability first. And if there's no liability, there's no punitive damages. That's the first issue. What's the second issue? The second one, we presented several in our brief. That's the only one I intend to talk about today, if there are no questions. And then Mr. Carey will be presenting on the punitive damages issue. So, that would be the second issue. I've just questioned why we have to speak for 45 minutes. About that, about those issues. But, you know, we're extremely patient human beings, but... Well, we'll see if I can get it done. Nature abhors the vacuum, but we don't have to fill the vacuum just because it's there. All right. Well, we'll see if I can get mine done in a little bit under the allotted time. We do have two consolidated appeals. And so, that's part of the reason that we laid it out this way. And so, I'm going to start by addressing BNSF's argument as petitioner. And those, as I said, will focus on liability. This court's case law, along with two unchallenged findings of the agency, compel reversal of the ARB's liability decision. And the first finding, and these are what we talked about in the brief, the first finding is that BNSF did not intentionally discriminate or violate the FRSA. And the second finding is that BNSF's managers honestly believed, when they acted, that they were punishing unprotected conduct. And under this court's decisions in the Rookert and Frost cases, each of those were looked at together independently, compel setting aside the agency order, finding BNSF liable. Frost didn't really care much about intent at all. Frost indicated that so long as a protected activity, which in this case, I take it as notification of workplace injury, is a contributing factor to the adverse action. And I think it uses the language, however small, or even if it's a very small part, then the plaintiff has adequately showed discriminatory intent. I mean, like it or not like it, we're bound by that rule. And that's the end of the story. Well, two things on that, Your Honor. First, the Rookert case, in which Your Honor participated and partially dissented, but on a different issue, came before Frost. And that, in the Rookert case, said that the contributing factor that must be shown is intentional retaliation. And then the second point is, although Frost did have some language, and I'm going to talk some more about that in a few minutes, at the end of the day, or really at the beginning of the analysis, the court said, look, we recognize this is a retaliation statute. And therefore, end quote, employers must act with impermissible intent or animus to violate the statute, end quote. And so here, you know, that's what the Frost court said we're ultimately looking for, is evidence of that retaliatory animus. Right, but Frost is talking out of both sides of its mouth, because it said to show that retaliatory animus, all you have to show is that the protected activity was contributing factor. Well, I would certainly never say that, but I acknowledge there's a substantial amount of confusion in that decision. And, you know, what we're hoping here, Your Honors, is that you will reverse the liability decision based on the argument I'm making, and also take the opportunity to clarify some of the statements in Frost that have led to really just substantial confusion in this area among the practitioners, and I would say with the ARB as well. But ultimately, Frost does say it's a retaliation statute. And here we have an express direct finding of no retaliation. So our principal argument is, finding simply cannot stand. Now, what do we do with the language? I see you're suggesting we distinguish Frost, but Frost has language like, there is no requirement that first plaintiffs separately prove intent beyond the contributing factor standard. In fact, it has so much language like that, I guess I'd ask how you think it's distinguishable. Sure. A couple of things about that. First, I won't really pretend to explain or understand what that really means, because BNSF was never arguing that there had to be separate proof of retaliatory motive. What we were arguing was that, was what Rookert said, that the proof of contributing factor has to include, has to count as proof of retaliation. So we weren't saying you have four elements here, and oh, by the way, we want you to add a fifth, that's a separate requirement of retaliatory motive. We're saying that the nature of the evidence of contributing factor has to be such that it would prove retaliation. And I think that's the best way to understand Frost in a way that doesn't conflict with Rookert, and in a way that doesn't conflict with itself with some of those other statements that your honor mentioned. Now, stepping back from that, the two things that the court can look at in this case, if you wanted to just take Frost as it is, is that in that case, there was no finding of no retaliation. So, you know, unless you read Frost as saying that retaliation has nothing to do with it, which would be difficult to do, given the statements that Frost made, you'd have to take that as a distinguishing factor. The second one, and this is, you know, where I think everything should come down to, is that what Frost is talking about, because it says that retaliation has got to be shown. So what it's talking about is what is or isn't needed to prove retaliation. Is it a contributing factor? Is it separate evidence of retaliation? It's what does it take to prove that ultimate fact? What's the means to the end of arriving at a determination of intentional retaliation? And so it's really, it can be treated as somewhat background noise in a unique situation like this, where we don't have to talk about what the evidence is or would be or might be that could support an intentional finding, I mean a finding of intentional retaliation, because we have a direct and express finding of no intentional retaliation. And so since we have that finding on the ultimate fact, which admittedly you're not going to have in most cases, you know, the whole discussion about, you know, what is contributing factor, where does retaliatory motive come in, can really just be set aside in this case. And the same is true of the Tenth Circuit's Kane decision that the ARB relies on, because in Kane it said the factual connection alone is not sufficient, that more has to be shown. But when the court was talking about more, it wasn't creating some mysterious new legal standard called more, it was talking about evidence of intentional retaliation. And we know that because the evidence the court pointed to was the type of evidence that typically is used to show retaliation, you know, temporal proximity, expressions of hostility toward the protected conduct. So just as in, as I was saying about of an intentional retaliation. And again, here we've got the direct finding, so we don't have to get into any of that. Well, assuming we think we're bound by the language in Frost, which says all that the plaintiff has to prove is that the protected activity was a contributing factor. Does that just mean you lose then that we affirm? No, I think you have to then talk about, well, what does it mean to, what does that mean to prove contributing factor? And then that gets into some of the ambiguity that I think the court should clarify about what Frost said, because remember, Frost was focusing on whether there was a requirement of separately proving retaliation. It never actually... Yale found it was a contributing factor, they said. That was, it disregarded or rejected the anyway. So it rejected the answer and found that it was a contributing factor. So that would seem to be enough to prove a violation of versus straight on occupative damages. Except that it also found expressly that there was no intentional retaliation. Right. But for Frost, I think we're putting that aside for the moment because Frost says that doesn't matter and all you have to find is a contributing factor. So then I want to know whether you lose or not. Well, I guess I would say you wouldn't, you could put aside that part of Frost, but you still have to decide what does Frost mean when it says all you have to show is a contributing factor. So the ALJ found that it was, that his reporting was a contributing factor. So are we bound by that finding? No, no, because the ALJ was applying a different legal standard. And with the ALJ, that decision wasn't inherently inconsistent because the ALJ at the time, this is an old case, at the time it was decided, the ALJ was looking at it as a situation where all that had to be shown was some factual connection in order to show contributing factor. The ALJ didn't believe that you had to show any kind of intentional retaliation to prove a violation. But so this court, you know, even setting aside Frost, you know, Rupert says you have to show intentional retaliation to prove contributing factor. So that decision would control. And then the other parts of Frost to keep in mind are the ones that repeatedly said you do have to show intentional retaliation and also direct court to, if you're reading this question that I think you would have to reach in that circumstance, which is what does proving contributing factor mean? If you look at part 4B of the Frost decision, in the second paragraph there, the court expressly equates proof of retaliation with proof of contributory factor. It refers to proof of disparate treatment and retaliatory conduct as proving the contributory factor. So in other words, one way to read Frost is that yes, it did say no proof of contributing factor alone is sufficient. There's no separate requirement of retaliatory motive. But in order to meet that burden of proving contributory factor, you of course have to have some evidence of retaliation because we've just told you this is a retaliation statute. And so it wouldn't make any sense to say it's a retaliation statute. Employer must have retaliated. But by the way, employer did not have to retaliate. And that's the way the opposing counsel are asking you to read Frost. And it's just not readable that way. So I think that the court should look back at Brooker's, take the parts about Frost that do talk about retaliation, recognize this is a unique situation because we have this finding of no intentional retaliation that isn't going to be present in most cases. And so even under Frost, Frost says ultimately at the end of the day, it's intentional retaliation. We've got the finding of no intentional retaliation. Therefore, we cannot have liability here. Liability, the work on liability cannot stand. So that would be the analysis that we would propose along with hopefully clarifying some of those statements in Frost. If there are no other questions, I'd like to reserve the remainder of my time for rebuttal. All right. I'll now hear from Mr. Carey, right? Okay. You're, you're mute. You're muted. Yeah, I've had some assistance on the technical stuff here. Please, the court and good afternoon, your honors. I'm Jamie Carey. I represent Steve Ruff. What I'd like to do with my time is first respond briefly to Mr. Neal's presentation regarding the underlying liability. And then I'm going to get into what is the basis for, for our appeal here, which is the ARB's reversal of the, ALJ's award of punitive damages. First, the, the statement that has caused such a kerfuffle was made by the ALJ in her analysis of whether punitive damages in this case were warranted. She had already determined that the liability was established and now she was addressing whether punitive damages were warranted and indicative of her thoroughness in the opinion. She, she noted that the, the standard legal standard of whether punitive damages are warranted in an FRSA case is as adopted by the ARB, the, the standard from Smith versus Wade, which contains or provides for at least three alternative ways in which evidence can provide and, and allow for punitive damages. One is whether there has been an, excuse me, an intentional violation of law. Another is, and whether there has been reckless disregard for the rights of the party. And so the statement that, and the finding from the ALJ about no intentional violation of the law was in connection with the punitive damages. Okay. Now let me step, I'll come back to that, but let me, let me step back to the liability. And the reason it's, there is, if there's any confusion, the reason is that intentional retaliation is, as Frost states, established by showing that the protected, protected activity played some part in the adverse employment action. And in order to establish causation, in order to establish the connection, the worker or the plaintiff is going to have to show circumstantial evidence that the protected activity contributed to the action. And that includes things such as temporal proximity, animus to the protected activity, shifting explanations for the discipline that's applied and so forth. The ALJ here did indicate that that contribution was established by inextricable intertwinement itself, but didn't stop there. There were findings that she made regarding all of the things I've just mentioned. And the ARB saw that and adopted those and found them to be sufficient to establish the contributory causation. And so to suggest that there is no evidence or basis for a finding of intentional discrimination per the statutory requirements is untrue because the findings were that the head of mechanical department, within 12 minutes of being informed that an injury report had been made, was to say, I want to pursue dismissal. There was the animus displayed not only by that, but by ordering Mr. Brough to go home, initially because of insubordination for not signing a disciplinary finding, but then it was changed to, well, you got to stay home because you reported your injury late. They fired him because he didn't report an injury on a certain date, and then argued in the actual hearing and trial that, well, we could have fired him and there's a basis for firing just because he didn't report an injury at all. And that wasn't the case, obviously. So this is not a case which was simply decided by a mere factual connection at all. It was a case that was decided based on three days of testimony and 100 page opinion by the ALJ, in which the circumstantial evidence of intentional retaliation per the statute was established. Now, so back, if I may, to the punitive damages. They are alternative, non-mutually exclusive bases to get there. And the ALJ went through them and said, first, I don't find that the managers intentionally violated the statute, meaning they didn't willfully, knowingly act, knowing that the result would be a violation of the FRSA. That's the intent that we deal with in a punitive damage situation. She found that they did not, but she did find that they recklessly disregarded the fact that he had engaged in protected activity, which they were fully aware of, and just simply disregarded that and focused on other aspects of the situation that ended up being, per the ALJ, pretextual or not supported or so on. So the case gets to the ARB. And the issue before the ARB is whether the ALJ erred in awarding punitive damages based on her finding, unchallenged, it was not, that the managers did not intentionally violate the statute vis-a-vis the punitive damages situation. And the court, the ARB said, based on that unchallenged finding, the ALJ erred. But that in and of itself disposes not of the entire issue, because there are alternative ways to reach punitive damages. The evidence was frankly, or not frankly, actually not challenged in terms of the reckless disregard. And that, and so by simply the ARB, by the ARB simply saying, well, yeah, she said no intentional violation, that doesn't answer the question. And so it didn't, it just did not fully dispose of or consider the entirety of the issue before it. But the other side says that Kolstad, our decision, Kolstad forecloses that argument, because Kolstad held that a finding of intentional discrimination does not warrant an award of punitive damages where the employer acted with the distinct belief that its action is lawful. And the ARB affirmed that the NSF believed it was challenging unprotected conduct, so that its actions were lawful. So the other side says Kolstad controls here. What's your response? My response to that is Kolstad, the statement you just read is qualified then in Kolstad by something to this effect. If an employer distinctly, honestly believes that it's not violate the rule, because of a bona fide occupational qualification, or a statutory exception to liability. Now, the FRSA does not have a bona fide occupational qualification defense. In fact, the only defense that provided for in the FRSA is the affirmative defense, the same action defense here. There is no statutory exception to the liability other than that. And as regards as relates to any aspect of good faith, in the statute itself, it is part of the plaintiff's burden of proof that he or she reported an injury in this case, in good faith, and the ALJ found that to be the case, and that was not challenged on appeal. And so Kolstad does not dictate that there was a legitimate defense to punitive damages based on the finding that they didn't intentionally violate the law, but they recklessly disregarded it. And Kolstad recognizes that as one of the alternative basis for punitive damages. I'd like to reserve the rest of my time at this point, if that's okay. All right. And I guess we'll hear it for now from Mr. Rommel. Yes, ma'am, please the court. My name is Dean Rommel. I'm here on behalf of the DOL's Administrative Review Board. I guess I would like to be real clear about what the findings were here by the agency in this case. There was no factual or any type of finding that BNSF did not intentionally retaliate against Mr. Brough. There was a finding that BNSF did not intentionally violate FRSA with respect to Mr. Brough, and that is obviously extremely relevant with respect to the punitive damages issue here. But with respect to the liability issue, the ALJ and the ARB, for the exact same rationale as this court explained in Frost, rejected the argument that there's any separate or intentional retaliation requirement that the employee must show demonstrating that the contributing factor is met. Instead, and I'm quoting from the ARB's decision, proof of the causal relationship between the protected activity and the adverse action is sufficient to establish any discriminatory intent that the statutory text implicitly requires. So, consistent with what this court said, the intentional retaliation is shown by showing, by the employee showing, that the protected activity, in this case the good faith injury report, was a contributing factor in Mr. Brough's termination. Now the ARB used a little bit of imprecise language in characterizing the ALJ's findings, and I think confused a little bit the violation of the law. But reading the entire ARB decision, it goes through all the necessary standards, or all the necessary burdens of proof that the employee must show, and affirm the ALJ that those burdens of proof were satisfied. And then it evaluated the affirmative defense that the NSF made and whether that was satisfied, and it rejected the argument by the NSF that it showed that the affirmative defense was satisfied. That's intentional retaliation, not the plain language of FRISA. I mean, FRISA itself provides the burden in the statute. It explains what they are, it explains what the employee has to show, and explains what the employer has to show to avoid any sort of liability. But reading the entire ARB decision in its whole, in its fullness, and walking through the various steps that the ARB found in finding that the employee satisfied his burden, and the NSF didn't, there's clearly a finding of an intentional retaliation. And the ARB and ALJ here, what it said about intentional retaliation and the standards that show it, were completely consistent with what this court said just two earlier. So the key factual findings here aren't, that sort of set this case apart a little bit, is that there was a finding of no intentional violation of statute. And there was a finding that there was no intent on the part of the NSF to punish protected activity, because they honestly believed that they were punishing unprotected activity. Those are sort of the relevant factual findings which led, which the ARB followed to reach its conclusion that there was indeed liability here, but there wasn't a basis or the standard for warranting punitive damages was not met. Specifically with respect to the honest belief issue, to the extent that there is good faith protected activity, and that just then the ALJ, as affirmed by the ARB, found that Mr. Brough's injury report was made in good faith, nobody challenges that on appeal. Whatever the NSF may have believed about whether he was making the injury report in good faith is simply not relevant to liability under the plain text of FERRISA. If that report is made in good faith, and of course if the remaining burdens of proof are shown, then liability attaches and follows from that. The ARB here also applied, you know, the correct standard that really gives full force to the contributing factor language in the statute. It required Mr. Brough to show not just that his discipline, you know, was inextricably intertwined with, you know, that with the protected activity or that it just happened to follow it from it. The ARB, consistent with other courts and relying specifically on the 10th Circuit decision of the NSF v. DOL case, said that the employee must show more, and it must show a true causal link and causal connection. And it identified the various facts that the ALJ found that demonstrates that that more was indeed there, and there was indeed a causation and a contributing factor satisfied here. With respect to the punitive damages issue, Polstat does provide the standard, and it is the Supreme Court's discussion of what reckless disregard means. The ARB and we all recognize that there are two ways of meeting the standard for warranted punitive damages. Of course, if there's an intentional violation of the law, then that is sufficient. Rarely is there that. And of course, and there was certainly no finding of that here, and that's unchallenged. The ARB, of course, recognized that reckless disregard could possibly, when the facts are there, warrant, you know, consideration of an consistent with the Supreme Court's decision of Polstat, the ALJ's specific factual finding that the NSF honestly believed that it was punishing unprotected activity means that its state of mind with respect to Mr. Brough's frizz of protected rights was in no way, you know, malicious. What is our standard of review? With respect to what is our standard of review on the punitive damages issue? All issues. Well, I mean, the APA provides the various standards review, and also the factual findings must be supported by substantial evidence. And with respect to, you know, legal conclusions, they may be reviewed de novo. With respect to the specific punitive damages issue, the ARB found that the ALJ sort of erred as a matter of law by not recognizing that that factual finding foreclosed any possibility of punitive damages. I mean, the fact that in a state of mind was that it honestly believed that it was protecting or that it was punishing unprotected conduct, and that that forecloses the reckless disregard finding. Because again, the analysis for punitive damages focuses entirely on the employer's state of mind. We know they've engaged in intentional retaliation discrimination when we're at the punitive damages stage. But then the question is, was that intentional discrimination or retaliation accompanied by an intent to violate the law, or was, you know, conducted in a way that shows reckless disregard for the employee's first of protected rights. And here, the punitive damages standard was not met in the first instance, according to the ARB, because neither of the two prongs intentional retaliation or reckless disregard was satisfied. And I mean, that's ultimately a legal conclusion by the ARB. With respect, just to follow up briefly on the, the Colstead issue. Mr. Carey cite some language from Colstead that follows the sort of general distinction between intentional retaliation and, you know, intentional violations of law with a sentence about bona fide or statutory exceptions to liability. This is on page 537 of the Colstead decision. You know, after setting forth the general standard that, that of course, not all intentional discrimination results in punitive damages, because there has to be a further showing with regard to the state of the mind. VA, sorry, the Supreme Court said the underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that it's discrimination satisfies a bona fide occupational qualification defense or other statutory exceptions to liability. Reading this sentence, I think it's plainly illustrative of the foregoing sentence, it's not meant to in any way limit the foregoing sentence, it provides examples of the circumstance described in the foregoing sentence, what provides some examples of when that situation may arise. So even if this court were to read it somehow as limiting the prior sentence, the statutory exception to liability is identified, is present here. If the NSF were actually correct, it wasn't, but as a matter of fact, the NSF was correct, that it's punishment of, you know, that the conduct or the actions that it took with respect to Mr. Brough were indeed, you know, if it was truly correct in its belief that he did not engage in a protected activity in good faith, then that is a statutory exception to liability there. Only protected activity under FRISA that is made in good faith can be the basis for liability. So again, I think that sentence is illustrative and I think that's plain for reading the entire paragraph, but to the extent that it's limiting on the facts here and the particular belief that NSF here had in this particular case, it's still, you know, it doesn't foreclose in any way a finding that the decision was correct to not award punitive damages. If there are no further questions, I think we respectfully request that the court, this court deny both the NSF's and Mr. Brough's petitions. Thank you. Okay. Mr. Neal, I think you have some time left for rebuttal. Yes, Your Honor. I'm going to try to hit two quick points here. The first one is that the finding that Mr. Romhill discussed at some length about the NSF believing that it was punishing unprotected activity, that's the additional finding that shows there's no liability and this comes directly from Frost because Frost said in that situation where the employer showed that it honestly believed that no protected activity occurred, quote, it would not be possible, end quote, for there to be liability. So I disagree with some of the statements made about what the findings were of retaliation, but we all agree we have that finding and we have an express statement in Frost that says this is the scenario where it would not be possible for there to be employer liability. That's the first point. Second point is we heard Mr. Harry and Mr. Romhill both talk about what they view as circumstantial evidence of retaliation, but that latter phrase is the point. It's not just circumstantial evidence in the air. The point of all of that is to prove that ultimate fact of intentional retaliation. So everyone involved, and Frost said too, that at the end of the day is an intentional retaliation statute. It doesn't matter that there is evidence in the record from which an ultimate finding of retaliation could have been supported when the fact finder came in and made an ultimate finding that there is no retaliation. And I disagree with Mr. Romhill about whether that finding was made. We cite to it in our brief if there are multiple times in the ALJ decision and the ARBs, it's at BNSF's record excerpt 19, which is page 15 of the ARB decision. It refers to the ALJ's challenge finding that BNSF did not intentionally discriminate or violate the FRSA. The intentional discrimination is retaliation. So that finding was made. And so we ask the court to set aside the agency's order. If there are no other questions, I'll thank you for your time. Thank you. Mr. Carey. Thank you, your honor. A couple of things. One is that with respect to whether the Kolstad can get out of punitive damage language or its description of that, whether it applies to the FRSA is in doubt, because there's, if you recall, I'm not saying it right, probably Tamasetis case that was one of the cases that was cited by the court in Frost. That case referenced the Kolstad type of, well, if there's a belief that we're not violating the law and we're trampling on anyone's rights because of a occupational qualification defense or statutory exception to liability. In that case, it was a, I don't know if it was this SOX statute, but something very similar to the FRSA. And the court there said, well, those are provides like the FRSA is the affirmative same action defense. So I would urge the court to look at that. Secondly, I respectfully disagree with Mr. Romhill in that, in his assertion that a finding of no intent to violate the law precludes, somehow precludes a finding, alternate finding that there was reckless disregard for the rights of Mr. Brough, which is what occurred here. The ARB opinion says nothing at all about the reckless disregard, says nothing at all, didn't rule it out, didn't mention it, didn't reference it. It framed the issue before, because this was the argument from BNSF, that the, whether the finding of no violation of the intentional violation of the statute would require reversal of punitive damages. So that's what the issue was, and that's what the ARB decided. And it's just simply did not discuss and did not, there is nothing in that opinion about that issue, which is half of the story. Half is, was there an intentional violation of law? No, there wasn't. Judge Gee said, no, there wasn't. But there was reckless disregard for Mr. Brough's rights in a number of ways. And that was what she based her conclusion, that punitive damages were warranted and should be awarded. And the ARB did not reference it whatsoever. As far as the honest belief instruction that was discussed briefly in the Frost case, that instruction came from a case called Armstrong versus BNSF. And in that case, there was video evidence that the person who had believed claimed an injury or something, there was video to show that didn't happen. So it wasn't, it was just simply an impossibility. And if there is no protected activity, literally none shown, then there can't be any violation of the statute if they didn't, you can't, there was no connection to make. And that's quite different from the situation like this, where the managers decided that they didn't believe Mr. Brough or that the injury report was not in good faith. That doesn't provide, so they believe that. That doesn't provide a defense to liability because the protected activity need only be a factor, not the substantial, not the only. And so the you're out of time, aren't you? Yeah. Yes. If I just can finish my thought. The contribution of protected activity and therefore the contribution burden being met is met even if there are other factors in addition to the protected activity that goes into the railroad's decision to discipline the person. And so even if, and as the ALJ found in the punitive damage section, even if they believed it wasn't a legitimate personal injury report, that doesn't do away with liability. It is not one or the other, both can go into the mix. And it's still connected. I think we have your argument. Thank you. The case of the NSF Railway Company and Steve Brough versus the Administrative Review Board is submitted and we're now adjourned for this session. Thank you, Your Honor. Thank you, Your Honors.
judges: Lucero, IKUTA, VANDYKE